UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES L. BURNS, III,<br><br>    Plaintiff,<br><br>  v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No.  2:20-cv-01182-JDP (SS)<br><br>ORDER GRANTING CLAIMANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 18 & 22 |

      Claimant challenges the final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits.  He argues that the Administrative Law Judge ("ALJ") committed multiple errors in evaluating his mental impairments and impermissibly relied on testimony from a vocational expert.  The Commissioner contends that the ALJ properly evaluated claimant's mental impairments and reasonably relied on the vocational expert's testimony.  Both parties have moved for summary judgment.  ECF Nos. 18 & 23.  The court agrees that the ALJ erred in evaluating claimant's mental impairments and therefore grants claimant's motion, denies the Commissioner's motion, and remands the matter for further proceedings.[1]

---

[1] Both parties have consented to magistrate judge jurisdiction. ECF No. 10.

1

**Standard of Review**

An ALJ's decision denying an application for disability benefits will be upheld if it is supported by substantial evidence in the record and the correct legal standards were applied. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, "[t]he ALJ's findings . . . must be supported by specific, cogent reasons," *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), and the court will not affirm on grounds upon which the ALJ did not rely, *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

A five-step sequential evaluation process is used in evaluating eligibility for Social Security disability benefits. Under this process the ALJ is required to determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a medical impairment (or combination of impairments) that qualifies as severe; (3) whether any of the claimant's impairments meet or medically equal the severity of one of the impairments in 20 C.F.R., Pt. 404, Subpt. P, App. 1; (4) whether the claimant can perform past relevant work; and (5) whether the claimant can perform other specified types of work. *See Barnes v. Berryhill*, 895 F.3d 702, 704 n.3 (9th Cir. 2018). Claimant bears the burden of proof for the first four steps of the inquiry, while the Commissioner bears the burden at the final step. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

**Background**

Claimant applied for a period of disability and disability insurance benefits, alleging disability beginning June 17, 2015, due to, among other things, severe hearing loss, tinnitus,

headaches, depression, and anxiety.[2] AR 154-55, 178. After his application was denied initially and upon reconsideration, claimant appeared and testified at an administrative hearing. AR 25-53, 75-79, 85-89. On June 21, 2018, the ALJ issued a decision finding that claimant was not disabled. AR 10-20.

The ALJ employed the sequential evaluation process and found at step one that claimant had not engaged in substantial gainful activity since June 17, 2015, the alleged onset date. AR 12. At step two, he determined that claimant's severe impairments were limited to bilateral hearing loss and tinnitus. AR 12-13. At step three, the ALJ found that claimant's impairments did not meet or equal a listed impairment. AR 16. Before proceeding to the fourth step, the ALJ determined that claimant had the residual functional capacity ("RFC") to perform work at all exertional levels, but "was required avoid all exposure to excessive noise and was limited to occupations that do not require fine hearing capability, complex verbal communication, frequent verbal communication, or any telephone communication." *Id.* Based on that RFC, the ALJ concluded at step four that claimant was unable to perform his past relevant work. AR 18. At the final step, the ALJ relied on testimony from a vocation expert to find that claimant—based on his age, education, work experience, and RFC—could perform work as a subassembler and therefore was not disabled. AR 19.

Claimant requested review by the Appeals Council, which denied the request. AR 1-3, 257. He now seeks judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**Analysis**

Claimant's advances four primary arguments as to how the ALJ erred. First, he argues that the ALJ erred at step two of the sequential evaluation process by finding that his mental impairments were not severe. Second, he argues that the ALJ erred evaluating his subjective complaints. Third, he claims the ALJ failed to provide adequate reasons for rejecting statements from claimant's mother. Lastly, claimant argues that the ALJ erred in relying on the vocational

---

[2] Claimant initially claimed that he had been disabled since May 10, 2010, AR 154, but he subsequently amended his disability onset date to June 17, 2015, AR 29.

expert's testimony to find that he could perform work as subassembler. ECF No. 18.

The court agrees that the ALJ committed reversable error in evaluating claimant's mental impairments. Because that error warrants remanding this case for further administrative proceedings, the court declines to address plaintiff's remaining arguments.

### 1. Step-Two Standard

At the second step, the ALJ assesses whether the claimant has a "medically severe impairment or combination of impairments that significantly limits his ability to do basic work activities." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); 20 C.F.R. § 404.1520(a)(4)(ii). The "ability to do basic work activities" is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). The purpose of this step is two-fold: first, it is a "screening device to dispose of groundless claims," *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), and second, it allows the ALJ to determine whether the alleged impairments are "severe" within the meaning of 20 C.F.R. § 404.1520(c). "An impairment or combination of impairments are 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)).

In cases alleging disability due to a mental impairment, the ALJ must assess the severity of impairment by following "a special psychiatric review technique." *Keyser v. Comm's of Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011). Under the technique, the ALJ first determines whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b). The ALJ then rates the degree of the resulting functional limitation in four broad functional areas: "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 404.1520a(c). The ALJ rates the degree of limitation in each area using a five-point scale—none, mild, moderate, marked, or extreme. Generally, if the limitation is rated as "none" or "mild" in the four areas, the impairment is "not severe, unless the evidence otherwise indicates that there is more than a minimal limitation" in the claimant's ability to perform work activities. 20 C.F.R. § 404.1520a(d)(1).

**2. Discussion**

At step two, the ALJ observed that claimant's medically determinable impairments included depression and anxiety, but ultimately concluded that these impairments were not severe. AR 16. In making that determination, the ALJ followed the psychiatric review technique and found that claimant had only mild limitations in each of the four functional areas. AR 16-17. Claimant argues that the ALJ, in making his non-severity finding, improperly rejected the opinion of treating psychologist Thomas Maples, Ph.D., and failed to consider the record as a whole.[3] ECF No. 18 at 22-30.

As a threshold matter, the Commissioner contends that, even if the ALJ erred in finding the impairments non-severe, any error was harmless because the ALJ "considered all of [claimant's] impairments in evaluating his claim of disability." ECF No. 22 at 10. If the claimant is found to have at least one severe impairment, the ALJ is required to consider all impairments—both severe and non-severe—in the remaining steps of the sequential evaluation process. *Smolen*, 80 F.3d at 1290; *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"). An ALJ's error in assessing the severity of an impairment is harmless if the ALJ considers the impairment and its resulting limitations in assess the claimant's RFC. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Contrary to the Commissioner's contention, the ALJ's decision does not reflect that claimant's anxiety and depression—which, according to the ALJ, resulted in mild limitations in each of the four functional areas—were considered after step two. In assessing claimant's RFC, the ALJ noted that claimant alleged an inability to work due to, among other things, anxiety, depression, and difficulty concentrating, interacting with others, and following instructions. AR 13-14. The ALJ, however, did not discuss how the mild limitations resulting from these impairments impacted claimant's ability to work. Instead, the ALJ's RFC determination focuses entirely on claimant's hearing loss and tinnitus—the two impairments that he found severe.

---

[3] Claimant also argues that the ALJ reach his step-two finding by selectively citing to evidence without due consideration of the entire record. ECF No. 18 at 22-25.

5

The ALJ's failure to consider all of plaintiff's impairments, including those found non-severe, warrants remand. *See*, *e.g.*, *Uranna G. v. Saul*, No. 3:18-cv-02117-RNB, 2019 WL 5342537, at *4 (S.D. Cal. Oct. 21, 2019) (reversing an ALJ's decision where the ALJ "found mild limitations in two of the broad functional areas" and "determined that plaintiff's . . . anxiety was non-severe," but failed to include "any reasoned consideration of the mild limitations caused by plaintiff's anxiety impairment in consideration with [its RFC finding]" (citation omitted)); *Gates v. Berryhill*, No. ED CV 16-00049 AFM, 2017 WL 2174401, *2-3 (C.D. Cal. May 16, 2017) (finding reversable error where the ALJ's RFC determination did not reflect "actual consideration and reasoned determination" with respect to claimant's "nonsevere limitation in social functioning," which resulted from a "nonsevere mental impairment"); *cf. Curtis v. Comm'r of Soc. Sec.*, 584 F. App'x 390, 391 (9th Cir. 2014) ("Although the ALJ wrote that he considered '[a]ll impairments, severe and non-severe,' in determining [the claimant's] residual functional capacity (RFC), we are unable to determine on the record before us whether the ALJ adequately considered [the claimant's] mental health limitations."); *Carmickle v. Comm's Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) ("Even though a non-severe impairment standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim.") (citations and quotations omitted).

The ALJ also erred by failing to provide legally sufficient reasons for rejecting Dr. Maples's treating opinion. Dr. Maples completed a Mental Impairment Questionnaire, which included his opinion as to claimant's functional limitations. He opined that while claimant was not significantly limited in performing activities of daily living, he was moderately limited in concentration, persistence, or pace, and markedly limited in maintaining social functioning. AR 338. Lastly, he concluded that claimant had experienced four or more episodes of decompensation within the last year, which Dr. Maples attributed to claimant's hearing loss. *Id*.

The ALJ gave rejected each of Dr. Maples's opinions. First, the ALJ concluded that Dr. Maples's opinion that plaintiff was not significantly limited in performing daily activities "ignores the effect of the claimant's hearing loss upon his ability to understand others." AR 15.

Contrary to the ALJ's suggestion, Dr. Maples did not ignore the impact claimant's hearing loss has on his ability to communicate with others.  Indeed, in support of his opinions, Dr. Maples specifically stated that claimant's depression is due to hearing loss and that he experiences high levels of anxiety engaging in social activities outside his home.  AR 335.  He also explained that claimant's "anxiety is caused because he cannot hear others."  Rather than ignoring the impact plaintiff's hearing loss has on claimant's ability to understand, Dr. Maples simply, and appropriately, addressed challenges with communication in conjunction with his discussion of claimant's ability to maintain social function.

      The ALJ, however, also disagreed with Dr. Maples's opinion that plaintiff had marked limitations in maintaining social functioning.  The ALJ concluded that that opinion was inconsistent with medical records reflecting that plaintiff was "pleasant, engaging, and interactive."  AR 15.  While claimant may have been able to attend medical appointments and interact appropriately with providers, other evidence in the record reflects significant issues with social functioning.  For instance, Dr. Maples—who also described claimant as pleasant, engaging, and interactive—noted that he had "communication difficulties," was "preoccupied," and that his functional status was "impaired."  AR 374, 376, 393.  Dr. Maples also repeated noted claimant's isolationist tendencies.   AR 374, 376, 380, 388, 391, 393, 394.  Indeed, one facet of Dr. Maples' treatment plan was to find areas of social activities so claimant could engage with others in a safe manner.  AR 375.  Considering the record as a whole, the few discrete notations stating that claimant was "pleasant, engaging, and interactive" are insufficient basis for rejecting Dr. Maple's opinion.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (holding that a proper evaluation of a treating physician's opinion considers "the record as a whole"); 42 U.S.C. § 423(d)(5)(B) (requiring an ALJ to base the decision on "all the evidence available in the [record]"); *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (the court may not affirm where the ALJ "pick[ed] out a few isolated instances of improvement" to support the denial of benefits).

      The ALJ also noted that claimant's treatment records showed that he had a "consistently alert appearance," which he viewed as contradicting Dr. Maples' opinion that he was moderately

7

deficient in concentration, persistence, or pace. AR 15. The ALJ failed to explain why claimant's alert appearance precluded him from having impairments with concentrating, persisting, and maintaining pace. Indeed, this conclusory finding ignored evidence that claimant's difficulty concentrating was due constant ear ringing associated with tinnitus. AR 37, 43, 48.

Finally, the ALJ concluded that Dr. Maples' opinion regarding adaptive functioning—i.e., episodes of decompensation—was inconsistent with other statements provided in the Mental Impairment Questionnaire. AR 15. The ALJ concluded that claimant was "far from exhibiting a loss of adaptive function" because "claimant has displayed an ability to adapt that has become the primary focus of addressing his hearing loss." *Id.* Yet, the ALJ misread Dr. Maples' Mental Impairment Questionnaire. Dr. Maples opined that, "[claimant's] ability to adapt to [his hearing loss] is the primary focus of treatment," indicting that claimant's ability to adapt is the primary goal of treatment—not that claimant has mastered the ability to adapt. AR 339. Thus, Dr. Maples was specifically attempting to improve claimant's ability to adapt.

Thus, the court concludes that the ALJ improperly rejected Dr. Maples' opinion and remands for further proceedings consistent with this order.

## CONCLUSION

As stated above, the court need not reach claimant's other issue. For the reasons stated in this opinion, the court remands this case for further consideration by the Social Security Administration. The court hereby orders that:

1. Claimant's motion for summary judgment, ECF No. 17, is granted.

2. The Commissioner's cross-motion for summary judgment, ECF No. 22, is denied.

3. The matter is remanded for further proceedings.

4. The Clerk of Court is directed to enter judgment in plaintiff's favor.

IT IS SO ORDERED.

Dated: March 31, 2022

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE